NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

SHAQUITA H., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.B., *Appellees*.

No. 1 CA-JV 19-0209
1 CA-JV 19-0218
(Consolidated)

FILED 12-17-2019

---

Appeal from the Superior Court in Maricopa County
No. JD529955
JS519238
The Honorable Karen L. O'Connor, Judge

**VACATED IN PART; AFFIRMED IN PART; REMANDED**

---

COUNSEL

John L. Popilek, P.C., Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Michael J. Brown joined.

---

**W I N T H R O P**, Judge:

¶1            Shaquita H. ("Mother") appeals the juvenile court's order terminating her parental rights to A.B.  Mother argues the Department of Child Safety ("DCS") failed to prove she is currently unable to discharge parental responsibilities because of chronic substance abuse, which was the same cause for termination of Mother's rights to another child.  *See* Arizona Revised Statutes ("A.R.S.") section 8-533(B)(10).   Because the court's findings regarding termination are not reasonably supported by the record, we vacate the portion of the order terminating Mother's parental rights to A.B., but we affirm the portion of the order finding A.B. dependent as to Mother.  We remand for further proceedings consistent with this decision.

## FACTS[1] AND PROCEDURAL HISTORY

¶2            Mother has a long history of substance abuse.  She began using cocaine at age thirteen and later abused additional substances including opiates, methamphetamine, and other amphetamines.  Mother's parental rights to four other children have been severed based, in part, on chronic substance abuse.  Mother was convicted of drug-related crimes in July 2016 and was incarcerated throughout dependency and severance proceedings regarding her fourth child, N.B.  Mother's rights to N.B. were terminated in June 2017 based on Mother's chronic substance abuse, among other grounds.

¶3            Mother was released on probation in April 2018 and became pregnant with A.B. soon after.  The Adult Probation Department ("APD") required Mother to complete substance abuse treatment and drug testing. Mother did not comply.  She attended only three of seven substance abuse treatment classes and continued to use drugs throughout her pregnancy, testing positive for methamphetamine, opiates, and cocaine in August 2018

---

[1]      We review the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

and positive for other amphetamines and THC in both September and November 2018. Mother missed ten other scheduled drug tests. When Mother was 28-weeks pregnant with A.B., she overdosed on fentanyl, crashed her car, and was briefly hospitalized.

**¶4** In January 2019, Mother admitted she had been using methamphetamine "a couple of times a week." When A.B. was born on January 25, 2019, both Mother and A.B. tested positive for methamphetamine and THC. DCS took temporary physical custody of A.B. and filed a dependency petition on January 30, 2019, with the case plan undetermined.

**¶5** Based on Mother's probation violation, APD obtained a warrant for Mother's arrest. A few days after giving birth to A.B., Mother scheduled a team decision meeting with DCS to arrange services and outline a plan for regaining custody of A.B. Ten minutes into the meeting, Mother was arrested by Phoenix Police for violating her probation. Mother was then incarcerated until June 5, 2019.

**¶6** During her incarceration, DCS filed a petition to terminate Mother's parental rights to A.B. based on the prior-termination ground, A.R.S. § 8-533(B)(10), alleging that Mother was unable to parent A.B. for the same reason her rights to N.B. were terminated: chronic substance abuse. A combined dependency and severance hearing was scheduled for June 13, 2019. During her four months in prison, Mother completed a 12-step LDS-sponsored recovery program; upon release, she scheduled an intake with TERROS and submitted to one drug test.

**¶7** The court held the combined dependency and severance hearing eight days after Mother was released from prison. At the time of the hearing, Mother's initial intake appointment with TERROS had not yet occurred, and DCS had not yet received the results from Mother's first drug test after her release from prison. The court took the matter under advisement, and later found A.B. to be dependent and terminated Mother's rights to A.B. based on the prior-termination ground and on the best interests of A.B.

**¶8** Mother filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), 12-2101(A)(1), and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

*I.     Standard of Review*

**¶9**          "Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005).  A court may sever parental rights if it finds clear and convincing evidence of one of the statutory grounds for severance and finds by a preponderance of the evidence that severance is in the child's best interest.  *See* A.R.S. §§ 8-533(B), -537(B); *Kent K.*, 210 Ariz. at 281-82, 288, ¶¶ 7, 41.

**¶10**          As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)).  Resolution of conflicts in the evidence is uniquely the province of the juvenile court, and we will not reweigh the evidence in our review.  *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002).  We will not disturb the juvenile court's order unless no reasonable evidence supports its factual findings.  *See Matthew L.*, 223 Ariz. at 549, ¶ 7.

*II.     Termination Pursuant to A.R.S. § 8-533(B)(10)*

**¶11**          Mother argues termination under A.R.S. § 8-533(B)(10) was improper because DCS failed to provide any evidence that she was *currently* unable to discharge her parental responsibilities due to chronic substance abuse at the time of the termination hearing.  *See* A.R.S. § 8-533(B)(10).[2]  On this record, we agree.

**¶12**          Under A.R.S. § 8-533(B)(10), the juvenile court may terminate parental rights if "the parent has had parental rights to another child terminated within the preceding two years for the same cause and is currently unable to discharge parental responsibilities due to the same cause."  The requirement that the prior termination be "within the preceding two years" is measured from the date the court terminated parental rights regarding the previous child to the filing date of the petition to terminate rights to the second child. *Tanya K. v. Ariz. Dep't of Child Safety*, 240 Ariz. 154, 156, ¶ 6 (App. 2016).  However, this Court has made clear that the requirement that the parent "is currently unable to discharge parental

---

[2]     Mother has not challenged the portion of the court's order finding A.B. dependent.

responsibilities due to the same cause" is measured "at the time of the termination hearing." *Id.* at 157, ¶ 9. The "same cause" here means "the factual 'cause' that led to the [preceding] termination . . . and not the statutory ground or grounds that supported the preceding severance." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 48, ¶ 11 (App. 2004).

**¶13** Here, the "same cause" is Mother's chronic substance abuse. Thus, in order to justify termination under § 8-533(B)(10), DCS needed to show that, at the time of the termination hearing, Mother was unable to parent A.B. because of chronic substance abuse. DCS failed to meet that burden.

**¶14** We can find no evidence in the record that, at the time of the termination hearing, Mother was unable to discharge her parental responsibilities due to chronic substance abuse. Although Mother does not dispute that she has a long history of substance abuse, her uncontroverted testimony at the termination hearing was that she did not use any illegal substances while incarcerated and was still clean at the time of the termination hearing. DCS stipulated to the fact that Mother completed a 12-step substance abuse recovery program while in prison. Furthermore, the day Mother was released from prison, she called her DCS caseworker to set up services. Mother cooperated in scheduling her TERROS intake appointment and appeared for her first drug test as scheduled the day before trial. At the time of the termination hearing, DCS had not yet obtained the results of Mother's first drug test and could provide no evidence of Mother's current substance abuse.[3] On this record, DCS failed to carry its statutory burden of proving Mother was, as of the time of the termination hearing, unable to discharge her parental responsibilities because of substance abuse.

**¶15** We recognize that one purpose for adding prior-termination as a ground for severance was to expedite termination proceedings to allow children to be placed in "permanent homes sooner." *See* Senate Fact Sheet, H.B. 2255, 43rd Leg., 1st Reg. Sess. (Ariz. May 15, 1997); *see also Tanya K.*, 240 Ariz. at 156-57, ¶ 7. But we do not believe the legislature intended to permit termination based on prior patterns of behavior without current

---

[3] When asked about Mother's current substance abuse, the case worker testified, "Even though [Mother is] just now testing now, she was clean in a controlled environment, and now she's no longer in a controlled environment. So the same pattern exists." There was no other testimony presented at the hearing alleging Mother was currently abusing illegal substances.

evidence of inability to discharge parental responsibilities. Rather, a history of substance abuse seems clearly insufficient to justify termination under § 8-533(B)(10) when the subsection is read in conjunction with the chronic substance abuse ground under § 8-533(B)(3). *See Pima Cty. Juv. Action No. J-78632*, 147 Ariz. 584, 586 (1986) ("[S]tatutes which relate to the same subject matter should be read together and all parts of the law on the same subject must be given effect, if possible.").

¶16      Termination of parental rights based on chronic substance abuse under § 8-533(B)(3) requires "a history of chronic abuse of dangerous drugs . . . [and] reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." In contrast, § 8-533(B)(10) — the ground for termination used in Mother's case — does not require a belief that a history of chronic substance abuse will likely continue, but rather, evidence that the parent "is currently unable to discharge parental responsibilities" because of substance abuse. We cannot ignore this distinction. *See Egan v. Fridlund-Horne*, 221 Ariz. 229, 239, ¶ 37 (App. 2009) ("[W]e presume that when the legislature uses different wording within a statutory scheme, it intends to give a different meaning and consequence to that language."). Although Mother has a long history of substance abuse, that history does not prove Mother was currently unable to discharge her parental responsibilities without any evidence of current, continuing substance abuse. DCS provided insufficient evidence to support termination under A.R.S. § 8-533(B)(10). As such, we vacate the court's termination order, and remand for further proceedings consistent with this decision.

### III.      *Alleged Due Process Violation*

¶17      Although we vacate the termination of parental rights on the aforementioned grounds, we briefly address Mother's constitutional claim. Mother argues that DCS violated her substantive due process rights when it facilitated her arrest for a probation violation while she was at a DCS team decision meeting. Mother claims DCS notified her probation officer that she was coming in for the meeting and then the probation officer notified Phoenix Police to execute a warrant. Mother argues that by doing this, DCS effectively "entrapped" her and prevented her from being able to engage in services or parent her child, violating her substantive due process rights.

¶18      We review constitutional claims *de novo*. *Brenda D. v. Ariz. Dep't of Child Safety*, 243 Ariz. 437, 442, ¶ 15 (2018). However, failure to object to an alleged due process violation subjects the claim to review for fundamental error. *Id.* at 447, ¶ 37. Under fundamental error review, the

parent has the burden of proving that error exists, that such error goes "to the very foundation of the case," and that the error caused the parent prejudice. *Id.* at 447-48, ¶ 38 (quoting *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, 94, ¶ 24 (App. 2005)). A nonspecific objection does not preserve the issue on appeal. *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 239, ¶ 13 (App. 2012).

**¶19** Although Mother complained generally at trial about the circumstances of her arrest, she made no specific argument that her due process rights had been violated until this appeal. Because she argues the due process violation for the first time on appeal, we review only for fundamental, prejudicial error. *See Brenda D.*, 243 Ariz. at 447, ¶ 37. Here, we find no such error regarding Mother's arrest. Lawful arrest pursuant to a valid warrant comports with due process. *See, e.g.*, *Baker v. McCollan*, 443 U.S. 137, 144 (1979). It is common for DCS to communicate with probation officers, and DCS did not violate Mother's due process rights by sharing her anticipated location with her probation officer. Furthermore, DCS' actions in communicating Mother's location were not what prevented Mother from participating in services following A.B.'s birth; rather, Mother's own actions in violating her probation led to her reincarceration and resulting inability to engage in services or parent her child. *See Mary Lou C.*, 207 Ariz. at 50, ¶ 18 (finding provision of services would be futile when parent was incarcerated and thus unable to complete substance abuse treatment). Because there was no error, Mother's due process claim fails.

## CONCLUSION

**¶20** For the foregoing reasons, we vacate the portion of the juvenile court's order terminating Mother's parental rights to A.B., affirm the portion of the order finding A.B. dependent as to Mother, and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED: AA