NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERT Z., SUSAN Z., *Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.Z., *Appellees*.

No. 1 CA-JV 21-0083
FILED 12-14-2021

Appeal from the Superior Court in Maricopa County
No. JD39223
The Honorable Karen A. Mullins, Judge (Retired)

**AFFIRMED**

COUNSEL

Terrea L. Arnwine PLLC, Tempe
By Terrea L. Arnwine
*Counsel for Appellant Robert Z.*

Crider Law PLLC, Mesa
By Brad J. Crider
*Counsel for Appellant Susan Z.*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Randall M. Howe delivered the decision of the court, in which Judge Brian Y. Furuya and Judge Michael J. Brown joined.

---

**H O W E**, Judge:

**¶1**　　　　Robert Z. ("Father") and Susan Z. ("Mother") (collectively "Parents") appeal the juvenile court's finding that their child, born March 2003, is dependent. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**　　　　We view the facts in the light most favorable to sustaining the juvenile court's findings. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235 ¶ 21 (App. 2005). The married parties are the biological parents of the child. The Department became involved when the child was 17 years old and lived with Parents and her older adult sister. Parents regularly became intoxicated and fought with the children. As a result, the child feared Parents, had previously voiced that she had thoughts about committing suicide and harming herself, and requested counseling, but Parents did not address her mental-health concerns. In March 2020, a particular argument escalated in the family, during which the child voiced her desire to harm herself and Father stated that he would buy a gun to kill the family and himself—a statement he had made more than once—and would buy a gun for the child to kill herself. The day after the argument, Parents went to Sedona for five days, leaving the child and her sister alone. Meanwhile, the child and her sister left the home and checked into a motel. A few days later, they moved in with the child's classmate's family. That same day, the Department obtained a court order to remove the child from Parents' home, and the classmate's family became the child's placement.

**¶3**　　　　A year later, the juvenile court found by a preponderance of the evidence that the child was dependent as to Parents based on neglect, specifically that (1) their excessive alcohol consumption made them "incapable of exercising proper and effective parental care and control and rendering the parents' home unfit by reason of neglect"; (2) their failure to address the child's mental health through services, or ensure her safety after she revealed her thoughts of suicide and self-harm to them, created "an unreasonable risk of harm to [the child's] health and welfare"; (3) Mother

failed and was unwilling "to exercise proper and effective parental care and control" in not protecting the child from Father's threats to buy a gun and kill the family and buy a gun so the child could shoot herself; and (4) Father failed and was unwilling "to exercise proper and effective parental care and control" in making those threats. However, the court ordered that the dependency be dismissed three days later, the day that the child turned 18 years old. Father and Mother timely appealed.

## DISCUSSION

¶4        Parents argue that the Department did not prove the dependency by a preponderance of the evidence, and Mother separately argues that the court abused its discretion in making an adverse inference against her for not testifying at the dependency adjudication hearing. We will review a dependency adjudication for an abuse of discretion. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488 ¶ 12 (App. 2015). Because the juvenile court was in the "best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings," *In re Pima Cty. Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987), we will affirm a dependency adjudication unless no reasonable evidence supports it, *Oscar F. v. Dep't of Child Safety*, 235 Ariz. 266, 267 ¶ 6 (App. 2014).

¶5        The Department argues that this case is moot because the child is now 18 years old. A juvenile court's jurisdiction ends by operation of law when a juvenile becomes 18 years old. A.R.S. § 8–246(A); *Matter of Appeal in Maricopa Cty., Juv. Action No. JD-6236*, 178 Ariz. 449, 451 (App. 1994). Because the juvenile court no longer has jurisdiction over the child, a favorable ruling from this court on many of the issues that Parents raise on appeal—that the Department did not make reasonable efforts to unify the child with them, that the court relied too heavily on the child's wishes about therapeutic visitation, and that they were entitled to obtain their own private services—will not affect their legal rights and responsibilities to the child. "A question is moot when any action the court may take will have no effect on the parties to the action." *Rohan Mgmt., Inc. v. Jantzen*, 246 Ariz. 168, 172 ¶ 9 (App. 2019) (quoting *Lord v. City of Tucson*, 10 Ariz.App. 54, 55 (App. 1969)). Because a ruling on these issues would have no effect, we need not address them.

¶6        Nevertheless, this appeal is not moot because the resolution of one issue will affect Parents: whether the juvenile court properly found that they neglected the child. A finding of dependency based on neglect will place a parent on the central registry of child abuse reports maintained by

the Department. A.R.S. § 8–804(A). Being placed on the registry may affect a person's ability to become foster parents, their fitness to adopt a child, employment opportunities, and certain licensing abilities. A.R.S. § 8–804(B). A ruling affirming or reversing the juvenile court's determination of dependency based on neglect will affect Parents' rights and abilities.

**¶7**     Turning to the merits of the issue of neglect, the juvenile court did not abuse its discretion in finding that the child is dependent as to Mother and Father based on neglect because reasonable evidence supports that finding. A child is dependent when the Department proves by a preponderance of the evidence, A.R.S. § 8–444(C)(1), that she is "[i]n need of proper and effective parental care and control," her parents are not "willing to exercise or capable of exercising such care and control," and her "home is unfit by reason of . . . neglect" from the parents, A.R.S. § 8–201(15)(a). The evidence supports the juvenile court's finding that Parents neglected the child in maintaining an unfit home through their regular intoxication, creating an unreasonable risk of harm to the child's health and welfare by failing to address her mental-health concerns, and subjecting the child to Father's threats.

**¶8**     Parents argue that the Department did not prove the dependency by a preponderance of the evidence. Mother argues that the Department has interfered in "family drama" and that the child does not have mental-health issues because she did not show signs of emotional distress. Further, Father argues that the child is delinquent, not dependent, and the Department did not offer evidence of abuse from a mental-health professional. Evidence from an expert witness is not required here, however, because the dependency finding was based on neglect and not abuse. Parental abuse results in "serious emotional damage . . . diagnosed by a medical doctor or psychologist," A.R.S. § 8–201(2), while parental neglect results if parents' unwillingness to provide the child with medical care "causes unreasonable risk of harm to the child's health or welfare," A.R.S. § 8–201(25)(a). Further, in determining a dependency, the court considers "the circumstances as they exist at the time of the dependency adjudication hearing." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 48 ¶ 1 (App. 2016). Thus, reasonable evidence supports the court's finding that the child was dependent based on neglect.

**¶9**     Mother also argues that the court abused its discretion in making an adverse inference against her for not testifying at the dependency adjudication hearing. She argues that because she testified at the Rule 59 hearing and had given her statement to the Foster Care Review Board, her testimony at the dependency adjudication hearing would have

been redundant. The court did not abuse its discretion because a negative inference is appropriate when a party declines to testify. *Melissa W. v. Dep't of Child Safety*, 238 Ariz. 115, 117 ¶ 5 (App. 2015); *cf. Gordon v. Liguori*, 182 Ariz. 232, 236 (App. 1995) (an adverse inference is appropriate "under limited circumstances" when a party fails to call a witness). The court stated that Mother's refusal to testify "justifies the inference that her testimony would have been unhelpful." Because reasonable evidence supports the juvenile court's findings, the court did not abuse its discretion.

**CONCLUSION**

¶10        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA