36 F.3d 1103
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NORTHBROOK PROPERTY AND CASUALTY INSURANCE CO., an Illinois
corporation, Plaintiff-Appellee,
v.
TRANSAMERICA INSURANCE COMPANY, a California corporation, Defendant,
and
Yuco Gin, Inc., an Arizona corporation, Defendant-Appellant.
 No. 93-15528.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted July 13, 1994.
Decided Sept. 1, 1994.
 
 Before: CHOY, LEAVY, and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 I. Whether The Indemnity Provision Violated Arizona Public Policy
 
 
 3
 Yuco Gin argues that the indemnity provision violates Arizona's public policy. Following precedent, the Arizona Supreme Court recently held, in an en banc decision, that
 
 
 4
 where ... the agreement clearly and unequivocally indicates that one party is to be indemnified, regardless of whether or not that injury was caused in part by that party, indemnification is required notwithstanding the indemnitee's active negligence.
 
 
 5
 Washington Elementary Sch. Dist. No. 6 v. Baglino Corp., 169 Ariz. 58, 817 P.2d 3, 5 (Ariz.1991) (en banc).
 
 
 6
 Yuco Gin argues that A.R.S. Sec. 32-1159 reverses Baglino by prohibiting all indemnification clauses. But A.R.S. Sec. 32-1159 by its terms applies only to construction contracts or architect-engineer professional service contracts. Because the purchase agreement between Yuco Gin and Lummus is neither a construction contract nor an architect-engineer professional service contract, A.R.S. Sec. 32-1159 does not apply. In Arizona, legislation is not to be interpreted beyond its plain meaning. See Deatherage v. Deatherage, 140 Ariz. 317, 681 P.2d 469, 472 (Ariz.Ct.App.1984) (legislature is presumed to express its meaning as clearly as possible and therefore the words in a statute are given their obvious and natural meaning); Roller Village, Inc. v. Superior Court, 154 Ariz. 195, 741 P.2d 328, 332 (Ariz.Ct.App.1987) (a statute that sets forth the subject on which it operates will be construed as excluding from its effect those subjects not expressly mentioned). The fact that the Arizona legislature expressly voided indemnity provisions in the construction context reaffirms that such indemnity provisions are valid generally. See United Bank v. Mesa N.O. Nelson Co., 121 Ariz. 438, 590 P.2d 1384, 1388 (Ariz.1979) (en banc) (statutes are to be construed consistently with the common law, and where the legislature has not clearly manifested its intent to repeal the common law rule, it will not be abrogated).
 
 
 7
 The appellants contend that A.R.S. Sec. 12-684 "expressly grants purchasers such as Yuco Gin a direct action ... against the manufacturer of any defective product for which the buyer is held liable." While this is true, A.R.S. Sec. 12-684 does not void the type of indemnity agreement found in this case. A.R.S. Sec. 12-682 provides that "the previously existing common law of products liability is modified only to the extent specifically stated in this article...." Under common law, parties to a purchase agreement may negotiate whatever allocation of risk they choose, including a provision that a manufacturer be indemnified. See, e.g., Owens v. Midwest Tank and Mfg. Co., 192 Ill.App.3d 1039, 549 N.E.2d 774, 778 (Ill.App.1989), appeal denied, 131 Ill.2d 560, 553 N.E.2d 397 (1990).
 
 
 8
 II. Whether the Indemnity Provision Was a Contract of Adhesion
 
 
 9
 Yuco Gin argues there was sufficient evidence to find an adhesion contract as a matter of law. Under Arizona law, "[a]n adhesion contract is typically a standardized form 'offered to consumers of goods and services on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract.' " Broemmer v. Abortion Servs. of Phoenix, Ltd., 173 Ariz. 148, 840 P.2d 1013, 1015 (Ariz.1992) (en banc) (quoting Wheeler v. St. Joseph Hosp., 63 Cal.App.3d 345, 133 Cal.Rptr. 775, 783 (Cal.Ct.App.1976)). The Arizona Supreme Court recognizes that " '[t]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms,' " id. at 1016 (quoting Wheeler, 133 Cal.Rptr. at 783) and that "the essence of an adhesion contract is that bargaining position and leverage enable one party to select and control risks assumed under the contract." Id. at 1016 (quotations omitted).
 
 
 10
 The evidence does not satisfy these tests nor does it comport with Arizona's other descriptions of a contract of adhesion. Lummus and Yuco Gin were sophisticated businesses with a history of dealing with each other. The presence of Lummus' competitor waiting in the lobby to sell the same equipment during the Lummus/Yuco Gin meeting gave Yuco Gin enormous leverage and thus far more bargaining power than the consumer presented with a "take it or leave it" choice. Further, there were changes to the language in the purchase order, which is evidence of negotiation between the parties.[1]
 
 
 11
 The appellants argue that the contract was adhesive because the indemnity clause was "boilerplate," was in tiny print, and was concealed by Lummus[2] and therefore, they never read it and would not have agreed to it had they read it. However, the affidavit presented on this issue is inadmissible because it was not based on personal knowledge. Affidavits not based upon personal knowledge cannot raise a genuine issue of material fact sufficient to withstand summary judgment. Fed.R.Civ.P. 56(e); Skillsky v. Lucky Stores, Inc., 893 F.2d 1088, 1091 (9th Cir.1990). Even if the affidavit created a genuine issue, "[p]arties cannot repudiate their written contracts by asserting that they neglected to read them[.]" Rocz v. Drexel Burnham Lambert, Inc., 154 Ariz. 462, 743 P.2d 971, 975 (Ariz.Ct.App.1987).
 
 
 12
 The appellants rely heavily on Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co., 140 Ariz. 383, 682 P.2d 388 (Ariz.1984) (en banc). There are several problems with applying Darner here. First, the purchase agreement shows evidence of negotiation. Second, there is no admissible evidence to create a genuine issue of fact that the entire contract was not read and not agreed to. Third, even if the portion of the purchase agreement containing the indemnification clause were a standard form contract provision, it can still be enforced:
 
 
 13
 The rule which we adopt today for interpretation of standardized contracts ... recognizes that most provisions of standardized agreements are not the result of negotiation; often, neither the customer nor salesperson are aware of the contract provisions. The rule ... charges the customer with knowledge that the contract being 'purchased' is or contains a form applied to a vast number of transactions and includes terms which are unknown ...; it binds the customer to such terms.
 
 
 14
 Darner, 682 P.2d at 398-99 (emphasis added). Finally, the Darner rule is narrowly applicable: "The rule which we adopt applies to contracts (or parts of contracts) made up of standardized forms which, because of the nature of the enterprise, customers will not be expected to read and over which they have no real power of negotiation." Id. at 399 (footnote omitted). As pointed out, Yuco Gin had the power to negotiate and did so.
 
 
 15
 The appellants also rely on Salt River Project Agri. Improvement and Power Dist. v. Westinghouse Elec. Corp., 143 Ariz. 437, 694 P.2d 198 (Ariz.1984) for the proposition that indemnity provisions are prohibited where they are forced unknowingly on a party. However, there is no evidence to defeat summary judgment that Yuco Gin was forced unknowingly to accept the provision.
 
 
 16
 Yuco Gin also argues it had no reasonable expectation that it would be liable for Lummus' negligence. "The doctrine of reasonable expectations should only be applied if the terms of the policy are ambiguous, the policy has a hidden trap or pitfall or the fine print takes away the coverage that is given by the large print." Gordinier v. Aetna Casualty and Sur. Co., 154 Ariz. 262, 742 P.2d 273, 276 (Ariz.Ct.App.1986). Yuco Gin does not argue that the terms of the indemnity provision are ambiguous. The policy has no hidden trap or pitfall and none of the fine print takes away coverage that is given by the large print.
 
 
 17
 The appellants argue the indemnity clause is unconscionable. "A bargain is 'unconscionable' if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.' " Broemmer v. Otto, 821 P.2d 204, 208 (Ariz.Ct.App.1991), vacated in other part, Broemmer v. Abortion Servs. of Phoenix, Ltd., 173 Ariz. 148, 840 P.2d 1013 (Ariz.1992) (en banc). Because indemnity clauses other than in construction and architect-engineer professional service contracts are acceptable in Arizona, this indemnity clause is not unconscionable. See Baglino, 817 P.2d at 5.
 
 III. Yuco Gin's Rule 56(f) Request
 
 18
 In its opposition to the appellants' motion for summary judgment, Yuco Gin requested a continuance pursuant to Federal Rule of Civil Procedure 56(f). The district court denied the request, finding that Yuco Gin had failed to provide "any type of meaningful rationale for granting a continuance[.]" This ruling was proper. Yuco Gin provided no affidavit setting forth the relevant facts expected from additional discovery. "Rule 56(f) requires affidavits setting forth the particular facts expected from the movant's discovery. Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir.1986).
 
 
 19
 IV. The Motion for Reconsideration and New Trial
 
 
 20
 We will not reverse the denial of motions for a new trial or for reconsideration absent an abuse of discretion. Fuller v. M.G. Jewelry, 950 F.2d 1437, 1441 (9th Cir.1991). With its motion for reconsideration, the appellants presented as new evidence the affidavits of Yuco Gin's former president and secretary. Yuco Gin was "obliged to show not only that this evidence was newly discovered or unknown to it until after the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." Frederick S. Wyle Professional Corp. v. Texaco, Inc., 764 F.2d 604, 609 (9th Cir.1985). The appellants provide no satisfactory reason why these affidavits were not presented earlier. The district court did not abuse its discretion by denying the motion for reconsideration.
 
 
 21
 "A motion for a new trial on ground of newly discovered evidence is addressed to the sound discretion of the trial judge." Balestreri v. United States, 224 F.2d 915, 916 (9th Cir.1955). The court denied the motion because the liability of the appellants was established by summary judgment, not by trial. Moreover, the court found that there was no new evidence and that none of the other considerations had been met. See id. at 917. This decision was not an abuse of the court's sound discretion.
 
 
 22
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 There is handwritten language added to the purchase order that penalizes Lummus $1000 per day for a late shipment. This demonstrates that the conditions were not such that Yuco Gin could not acquire the necessary equipment "except by acquiescing in the form contract." Broemmer, 840 P.2d at 1015
 
 
 [2]
 The appellants have only a "theory" that Lummus intentionally concealed the indemnity clause from Yuco gin. Such conclusory allegations are insufficient to defeat a motion for summary judgment. First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, (1968); Shane v. Greyhound Lines, Inc., 868 F.2d 1057, 1061 (9th Cir.1989)